IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| NDABEZINHLE MOYO,<br>   *Plaintiff*,<br><br>   v.<br><br>THE UNITED STATES OF AMERICA,<br>   *Defendant*. | Civil Action No. ELH-12-1857 |

## MEMORANDUM OPINION

Ndabezinhle Moyo, the self-represented plaintiff, sued the United States Department of Health and Human Services ("HHS"), seeking damages in the amount of $2.5 million due to regulatory enforcement actions that he alleges were taken by an agency of the federal government with respect to residential rental properties that plaintiff owned in Baltimore, Maryland. By leave of Court, plaintiff is proceeding *in forma pauperis*, *i.e.*, without paying the filing fee, due to financial hardship. *See* ECF 2 & 3. The United States has moved to substitute itself as the defendant, in place of HHS, and to dismiss plaintiff's suit for lack of subject matter jurisdiction. *See* "Motion to Dismiss for Lack of Subject Matter Jurisdiction" ("Motion") (ECF 7). No hearing is necessary to resolve the Motion. *See* Local Rule 105.6.

For the reasons that follow, I will grant the Motion in part and deny it in part. In particular, the United States will be substituted as the sole defendant, the Complaint will be dismissed to the extent that it sounds in defamation, and the Motion will otherwise be denied. However, in light of a glaring deficiency in the Complaint that the government has not addressed, I will direct plaintiff to show cause why the Complaint should not be dismissed for failure to state a claim upon which relief can be granted.

**Background**

Plaintiff filed his Complaint (ECF 1) on June 22, 2012. It contained the following allegations:

> Being new in the property management industry, I tried to make sure all the properties I bought had a MDE (Maryland Department of the Environment) lead certificate, however my other attorney . . . failed to pay attention to those details.
>
> I maintained all the properties to meet the city codes and standards of the EPA and HUD (Depart[ment] of Housing & Urban [D]evelopment). As a rule of professional standards I made sure before a new tenant took possession of the property, I would make sure the units were cleaned, install new locks for doors, repaired all damages from previous tenant, paint, clean and shampoo all the carpeted floor coverings. Typically, it would cost me [a] minimum of $5,000.00 just to bring each unit to livable and enjoyable for the new tenant. Unfortunately it seemed being a small business owner like myself the government agencies targeted me and brought me to ruin without inspecting my properties.
>
> Without notice my tenants at Bond Street, Erdman Avenue and Brookfield Avenue had been contacted by the EPA (Environmental [P]rotection Agency) and told that the properties mentioned had lead paint. I was not aware till [sic] I was told by the tenants that they also had been ordered not to continue paying rent. It is this type of abuse of power that would eventually collapse my business because [of] not [being] given due process by the agency conduct.
>
> I was immediately summoned to court[.] I produced the lead certificate and the other property I was still working on as a multifamily building it took a little longer. In the mean time [sic] this gave the tenants . . . free passage not to pay, while on the other hand the attorney who settled / closed on this property never paid nor gave me my money that was put in escrow as agreement at the time of purchase with the seller which was more than $5,000.00.
>
> Eventually the actions of the EPA hugely affected my operation of the property management company because tenants would turn to my other tenants and incite them not [to] pay and eventually the cause of my business to fail and file for bankruptcy. This type of behavior obvious[ly] was never targeted towards the previous landlords or owners of the properties but me.
>
> The losses [of] income and loss of property was well over a $1,000,000.00 (one million dollars). I lost all my rental properties and my family home totaling 8 properties to nothing now.

The United States filed its Motion on August 29, 2012, seeking dismissal for lack of subject matter jurisdiction. In particular, the United States asserted that plaintiff failed to exhaust his administrative remedies before filing suit, as required by the Federal Tort Claims Act ("FTCA").[1] Moreover, the United States argued that it has not waived its sovereign immunity under the FTCA as to claims of defamation.

On or about October 19, 2012, plaintiff filed a "Motion to Stay for Having Subject Matter Jurisdiction" ("First Opposition") (ECF 11) (docketed on October 26, 2012), which the Court construed as a response to the Motion. However, before a ruling on the Motion was rendered, plaintiff filed an "[e]xtension request" for additional time to respond to the Motion. ECF 13. The Court granted plaintiff until January 4, 2013, to file a response. *See* ECF 14.

Thereafter, plaintiff filed a second document entitled "Motion to Stay for Having Subject Matter Jurisdiction" ("Second Opposition") (ECF 15) (dated December 31, 2012, and docketed on January 7, 2013), which is functionally an opposition to the Motion.[2] And, he later filed an "Addendum to Memorandum of Facts in Support of [His] Motions" ("Addendum") (ECF 16) (dated January 31, 2013, and docketed February 11, 2013). The United States has not filed a reply to any of plaintiff's submissions.

Additional facts are presented in the discussion.

---

[1] The FTCA is codified across several sections of the United States Code, including 28 U.S.C. §§ 1346, 2401, and 2671 to 2680.

[2] Because the Second Opposition was titled as a "Motion," it was docketed as a motion pending for decision, rather than an opposition.

**Discussion**

A.  Standard of Review

The United States' Motion challenges the Court's subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  Such a motion raises the issue of "whether the court has the competence or authority to hear and decide the case."  *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005).

A challenge to subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction; or a factual challenge, asserting "'that the jurisdictional allegations of the complaint [are] not true.'"  *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted); *see also Buchanan v. Consol. Stores Corp.*, 125 F. Supp. 2d 730, 736 (D. Md. 2001).  In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction."  *Kerns*, 585 F.3d at 192; *see also Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).  In a factual challenge, on the other hand, "the plaintiff bears the burden of proving the truth of such facts by a preponderance of the evidence."  *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009).  In that circumstance, the court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."  *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004).

The district court is "entitled to decide disputed issues of fact with respect to subject matter jurisdiction," *Kerns*, 585 F.3d at 192, "[u]nless 'the jurisdictional facts are intertwined

with the facts central to the merits of the dispute.'" *Vuyyuru*, 555 F.3d at 348 (citation omitted). Moreover, "the district court may . . . resolve the jurisdictional facts in dispute by considering evidence . . . such as affidavits." *Id.*[3]

### B.  Federal Tort Claims Act

Plaintiff's Complaint does not expressly articulate a particular legal cause of action. However, as the government recognizes, the pleadings of self-represented litigants must be liberally construed. *See, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Under the FTCA, the United States has waived its sovereign immunity, subject to certain exceptions, as to claims

> for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1) (granting subject matter jurisdiction over such claims to the district courts); *see also id.* § 2674 ("The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances . . . ."). Plaintiff's allegations can be construed to come within the ambit of the FTCA. And, as to claims that are "cognizable" under the FTCA, the FTCA is the "exclusive" remedy against the United States or its agencies or employees. *Id.* § 2679(a).

As a preliminary matter, "the United States is the only proper party defendant to a FTCA suit." *ITT Fed. Servs. Corp. v. Anduze Montano*, 474 F.3d 32, 34 (1st Cir. 2007); *accord Iodice*

---

[3] The court may also "hold an evidentiary hearing to determine whether the facts support the jurisdictional allegations." *United States v. North Carolina*, 180 F.3d 574, 580 (4th Cir. 1999); *accord Kerns*, 585 F.3d at 192.  However, neither side has requested a hearing in this case, and a hearing does not appear necessary.

*v. United States*, 289 F.3d 270, 273 n.1 (4th Cir. 2002). As Chief Judge Deborah K. Chasanow explained in *Chang-Williams v. Department of the Navy*, 766 F. Supp. 2d 604 (D. Md. 2011): "The FTCA expressly provides that federal agencies are not amenable to suit under its provisions. The Act provides for liability against only '[t]he United States,' and plaintiffs seeking relief under the Act may pursue it against that defendant alone." *Id.* at 608 (citing, *inter alia*, 28 U.S.C. § 2679(a)) (internal citations omitted). Accordingly, the United States has moved to substitute itself as the sole defendant, in place of HHS, *see* Motion at 1 n.1, and its Motion will be granted in that respect.

One of the limitations of the United States' waiver of sovereign immunity under the FTCA is that the government retains its immunity from suit for certain types of claims, which are enumerated in 28 U.S.C. § 2680. Of particular relevance here, the FTCA preserves the United States' immunity against claims of "libel" or "slander," 28 U.S.C. § 2680(h), which respectively constitute the written and oral varieties of the tort of defamation. *See, e.g.*, *Gen'l Motors Corp. v. Parker*, 27 Md. App. 95, 113, 340 A.2d 767 (1975), *aff'd in part, rev'd in part on other grounds sub nom. Gen'l Motors Corp. v. Piskor*, 277 Md. 165, 352 A.2d 810 (1976).[4] Thus, the government correctly argues that, to the extent that the unclear allegations of plaintiff's

---

[4] Tort claims under the FTCA are evaluated "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Because the acts or omissions alleged by plaintiff took place in Maryland, the Court must apply Maryland's substantive tort law. *See Anderson v. United States*, 669 F.3d 161, 164 (4th Cir. 2012) (stating that, under the FTCA, "the substantive law of each state establishes the cause of action").

Under Maryland law, "'[a] defamatory statement is one which tends to expose a person to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from having a good opinion of, or associating with, that person.'" *Norman v. Borison*, 418 Md. 630, 645 n.10, 17 A.3d 697, 705 n.10 (2011) (citation omitted). The tort of defamation consists of four elements: "'(1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff thereby suffered harm.'" *Id.* (citations omitted).

Complaint can be construed to state a defamation claim, the claim is "barred by the FTCA's preservation of sovereign immunity against defamation actions." *Shirvinski v. United States Coast Guard*, 673 F.3d 308, 316 (4th Cir. 2012) (citing 28 U.S.C. § 2680(h)).  The Court lacks subject matter jurisdiction over a defamation claim against the United States, and so the government's Motion will be granted in this respect as well.

The main thrust of the government's argument is that plaintiff's suit is barred by another limitation of the FTCA, which is the requirement of notice to the federal agency whose actions are at issue.  This notice requirement is sometimes described as a requirement of "administrative exhaustion."  *See, e.g.*, *Borneman v. United States*, 213 F.3d 819, 829 n.3 (4th Cir. 2000). It is established by 28 U.S.C. § 2675(a), which provides (with exceptions not relevant here):

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency . . . .

Under Fourth Circuit precedent, the requirement to provide notice of a claim "to the appropriate Federal agency," *id.*, is treated as a jurisdictional bar.  *See, e.g.*, *Drew v. United States*, 217 F.3d 193, 196 (4th Cir.) ("Where . . . a claim is not first presented to the appropriate agency, the district court must, pursuant to Fed. R. Civ. P. 12(b)(1), dismiss the action for want of subject matter jurisdiction."), *aff'd en banc by equally divided court*, 231 F.3d 927 (4th Cir. 2000), *cert. denied*, 532 U.S. 1037 (2001).[5]

---

[5] In a series of relatively recent decisions, the Supreme Court has instructed that the "jurisdictional label" ordinarily should not be applied to so-called "claim-processing rules," even where such claim-processing rules are "important and mandatory." *Henderson ex rel. Henderson v. Shinseki*, ___ U.S. ___, 131 S. Ct. 1197, 1203 (2011).  They are rules that "seek to

The government contends that plaintiff failed to give notice of his claim to the HHS, the agency that he named as the defendant. In support of this contention, the government has submitted a declaration of Erica Gibson, Esq., an attorney in the General Law Division, Office of General Counsel of HHS, who avers that she "caused a search of [HHS's] claims office's database to be conducted and found no record of an administrative tort claim filed by Ndabezinhle Moyo or an authorized representative." Declaration of Erica Gibson ¶ 4, Ex.1 to Motion (ECF 7-2).

In response to the government's allegation, plaintiff submitted with his First Opposition a copy of a letter to plaintiff from the Torts Branch of the Civil Division of the United States Department of Justice ("DOJ"), dated April 21, 2011, acknowledging receipt of his "administrative tort claim dated March 25, 2011." ECF 11-2 at 1.[6] In addition, he submitted a copy of a second letter to him from DOJ, dated January 24, 2012, stating that, after "careful consideration" of plaintiff's tort claim, "it has been determined that [his] claim is not

---

promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Id.* The problem is that characterizing such a rule as "jurisdictional" implies that it cannot be waived by any party and ought to be addressed by a court on its own initiative, which "alters the normal operation of our adversarial system" and "may also result in the waste of judicial resources and may unfairly prejudice litigants." *Id.* at 1202. *See Wilson v. United States*, Civ. No. ELH-11-1205, 2012 WL 1555442, at *5 n.6 (D. Md. Apr. 30, 2012) (cataloging Supreme Court cases). However, none of the recent Supreme Court decisions discussing this issue has "addressed the character of the FTCA's notice requirement, nor has the Fourth Circuit altered its prior conclusions in light of the Supreme Court's recent cases. Therefore, the circuit precedent holding that the notice requirement is jurisdictional remains controlling." *Id.*

[6] The exhibits to plaintiff's First Opposition, which are not separately numbered, have been docketed as a single document. *See* ECF 11-2. I cite to the pagination of that document created by the CM/ECF electronic filing system.

compensable under the Federal Tort Claims Act (FTCA)," and "is denied." ECF 11-2 at 2.[7] The letter of January 24, 2012, further advised Mr. Moyo of his right to file suit under the FTCA within six months after the denial of his claim, pursuant to 28 U.S.C. § 2401(b).[8] The letter indicated that courtesy copies of it were sent to legal counsel for several federal agencies, including the Acting Deputy Associate General Counsel of HHS and the General Counsel of the Environmental Protection Agency ("EPA").

As noted, the United States has not filed a reply to any of the papers that Mr. Moyo has submitted in opposition to its Motion. So, it has not explained the apparent discrepancy between its contention, supported by Ms. Gibson's declaration, that an administrative claim was not presented, and the two letters from DOJ submitted by plaintiff that suggest otherwise.

I realize that plaintiff has not submitted a copy of the actual claim that he submitted to DOJ, nor does either letter from DOJ disclose the precise nature of plaintiff's claim. Therefore, the Court cannot determine whether the claim submitted by plaintiff encompassed the allegations on which he now seeks to sue, or whether his claim was otherwise sufficient. *See* 28 U.S.C. § 2675(b) & 28 C.F.R. §§ 14.2(a), 14.4 (specifying information to be submitted as part of claim). But, unless the documents submitted by plaintiff are a fabrication (and the United States has not suggested that they are), they indicate that plaintiff did submit an administrative tort claim, thereby contradicting the government's assertion to the contrary.

---

[7] The second letter from DOJ referred to plaintiff's claim as having been submitted on "February 15, 2011," although the first letter had referred to a claim submitted on "March 15, 2011." The record contains no explanation for this discrepancy, but it is not material at this juncture.

[8] Assuming that the letter of January 24, 2012, satisfied the requirement of administrative denial of plaintiff's claim, his Complaint was timely filed within six months thereafter, on June 22, 2012.

To be sure, the fact that the letters were sent by the Torts Branch of the Civil Division of the Department of Justice tends to suggest that plaintiff's claim was submitted to DOJ, rather than to HHS. The FTCA requires that claims be submitted to the "appropriate Federal agency," 28 U.S.C. § 2675(a), and, although the statute does not dictate which agency is "appropriate," the Department of Justice by regulation has interpreted that as "the Federal agency whose activities gave rise to the claim." 28 C.F.R. § 14.2(b)(1).[9] Although plaintiff named HHS as the defendant in this action, his reasons for doing so are not readily apparent. To the extent that his Complaint alleges any acts taken by any federal agency (an issue that I will discuss in more detail below), the agency "whose activities gave rise to the claim," *id.*, would seem to be the EPA, not HHS.[10] In any event, DOJ's regulations governing administrative tort claims under the FTCA also provide that, "[w]hen a claim is presented to any other Federal agency"—*i.e.*, any agency other than the agency whose activities gave rise to the claim—"that agency shall transfer it forthwith to the appropriate agency, if the proper agency can be identified from the claim, and advise the claimant of the transfer." *Id.* The regulation also provides a protocol for designation of a single agency to investigate and resolve a claim in circumstances where a claim might implicate several

---

[9] Pursuant to 28 U.S.C. § 2672, the Department of Justice has promulgated regulations governing consideration of administrative tort claims by all federal agencies, although each agency is also authorized to establish by regulation its own supplemental procedures for processing of FTCA claims, consistent with the DOJ regulations. *See* 28 C.F.R. § 14.11.

[10] HHS and the EPA are separate agencies; neither agency is a component of the other. HHS is a cabinet-level department in the Executive Branch of the federal government. *See* 5 U.S.C. § 101. The EPA is a federal Executive Branch agency that was established in 1970 by executive order. *See* Reorganization Plan No. 3 of 1970, 35 Fed. Reg. 15623 (Dec. 2. 1970), *reprinted in* 5 U.S.C. App'x 1.

As noted, neither HHS nor the EPA is a proper defendant in this suit, because only the United States (which encompasses both agencies) may be sued under the FTCA. Accordingly, which agency was named as defendant in the Complaint does not appear relevant to the issue of which agency was the appropriate recipient of FTCA notice.

agencies. *See id.* § 14.2(b)(2)-(3). And, as noted, copies of the letter from DOJ denying plaintiff's claim apparently were sent to legal counsel for both HHS and the EPA. Accordingly, I see no basis to conclude, at this juncture, that plaintiff's submission of his claim to DOJ, rather than to HHS or the EPA, was a fatal defect.

In the absence of a reply from the government clarifying the issue of FTCA notice in light of the letters to plaintiff from DOJ, I cannot conclude that plaintiff failed to administratively exhaust his claim. Accordingly, I will deny the government's Motion to the extent that it is premised on the failure of administrative exhaustion.[11]

## C. Implausibility

Nevertheless, I must observe that plaintiff's Complaint appears completely implausible in one fatal respect, which the government has not addressed. Specifically, it appears, to a virtual certainty, that the actions of which plaintiff complains were not taken by any federal agency of the United States government, but were taken by the Maryland Department of the Environment ("MDE"), which is an agency of the State of Maryland.

---

[11] It follows that I need not consider plaintiff's Addendum, in which he discloses that, out of an abundance of caution, he filed an administrative tort claim with HHS on January 31, 2013, using the optional Standard Form 95. *See* ECF 16-1 (plaintiff's completed Standard Form 95); *see also* 28 C.F.R. § 14.2 (providing for presentation of claims by submission of a "Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain"). Indeed, the newly-submitted claim has no relevance. If the prior presentation of plaintiff's claim to DOJ was defective, his subsequent presentation of the Standard Form 95 to HHS after suit was filed would not cure the defect.

In order to vest a district court with subject matter jurisdiction under the FTCA, a plaintiff must submit the claim to the appropriate agency before filing suit. And, the plaintiff must also wait to file suit until the claim has "been finally denied by the agency in writing and sent by certified or registered mail," 28 U.S.C. § 2675(a), or until six months have passed since the claim was presented, in which case the claim may be deemed denied. *See id.* Accordingly, presentation of an administrative tort claim to an agency after suit was filed cannot retroactively correct a failure to present the claim before filing suit.

To the Court's knowledge, neither the federal EPA nor HHS makes an ordinary practice of inspecting residential rental housing for compliance with lead paint abatement codes and other state and local housing ordinances. Indeed, along with his First Opposition, in addition to the two letters from DOJ, plaintiff has submitted several other documents that strongly suggest that the regulatory activity of which he complains was undertaken by the MDE, not the federal government. These documents include a "Notice of Violation" dated October 25, 2007, sent by the MDE; an "Administrative Order and Penalty" dated February 13, 2008, also sent by the MDE; and a letter dated May 19, 2008, from a Maryland Assistant Attorney General assigned to the MDE, proposing a settlement offer to plaintiff. *See* ECF 11-2 at 4-14. All of these documents concern a matter denominated "Case #07-30-10807," apparently arising out of plaintiff's alleged failure to comply with a Maryland state statute, the Maryland Lead Risk in Housing Act, Md. Code (2007 Repl. Vol., 2012 Supp.) §§ 6-801 *et seq.* of the Environment Article ("Env."). The only reference to any federal agency that is contained in any of these documents is an assertion, in the Notice of Violation, that plaintiff was required by state law to provide his tenants with a pamphlet entitled "Protect Your Family from Lead in Your Home," published by the EPA.[12]

In sum, the Complaint and the other documents that plaintiff has submitted provide a powerful indication that plaintiff's grievance is with the Maryland Department of the

---

[12] The statutory provision cited in the Notice of Violation requires the landlord of a lead-affected property to provide a tenant with "a lead poisoning information packet prepared or designated by the [Maryland] Department [of the Environment]." Env. § 6-823(b)-(c). The EPA's pamphlet appears to be part of the material designated by the MDE for periodic distribution to tenants, pursuant to the statute. *See* http://www.mde.state.md.us/programs/Land/ LeadPoisoningPrevention/RentalPropertyOwners/Pages/Programs/LandPrograms/ LeadCoordination/rentalowners/index.aspx (last visited Feb. 26, 2013).

Environment, and not any agency of the United States.[13]  It appears almost certain that plaintiff has sued the wrong government body entirely.[14]

As noted, plaintiff is proceeding *in forma pauperis*.  When a plaintiff does so, 28 U.S.C. § 1915(e)(2)(B)(ii) mandates that the court "shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted." Moreover, "a district court may *sua sponte* [*i.e.*, on its own initiative] dismiss a complaint for failure to state a claim," even when the plaintiff is not proceeding *in forma pauperis*.  *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 655 n.10 (4th Cir. 2006).  Indeed, "[w]here the face of a complaint plainly fails to state a claim for relief, a district court has 'no discretion' but to dismiss it." *Id.*  (citing 5A WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1357 (2d ed. 1990)).

In determining whether a complaint states a claim on which relief can be granted, federal courts are guided by the standard articulated by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), which "expounded the pleading standard for 'all civil actions.'"  *Iqbal*, 556 U.S. at 684 (quoting *Twombly*, 550 U.S. at 554).  In those cases, the Court held that a complaint must set forth "enough factual matter (taken as true) to suggest" a cause of action that is "plausible."  *Twombly*, 550 U.S. at 556.

"Determining whether a complaint states a plausible claim for relief," under the plausibility standard articulated in *Iqbal* and *Twombly*, is "a context-specific task that requires

---

[13] I note that plaintiff resides in Canada.  The distinctions between agencies of local, state, and federal governments in the United States may not have been entirely clear to him.

[14] In pointing out this apparent case of mistaken identity, I do not suggest that, if plaintiff were to sue the Maryland Department of the Environment, he would have a viable cause of action.

the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. To be sure, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable," so long as it is merely plausible. *Twombly*, 550 U.S. at 556. But, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. In other words, a complaint must contain sufficient factual detail to "nudge[ ] [the plaintiff's] claims across the line from conceivable to plausible." *Id.* at 570; *accord Iqbal*, 556 U.S. at 680. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown that "'the pleader is entitled to relief.'" *Id.* at 679 (citation omitted).

Accordingly, I will direct plaintiff to show cause why his Complaint should not be dismissed for failure to state a claim upon which relief can be granted. Plaintiff should do so by supplementing his Complaint with specific factual allegations (and documentary evidence, to the extent possessed by plaintiff) with respect to the identity of the governmental agency (or agencies) that took the actions of which plaintiff complains. Failure to identify facts that plausibly suggest that the actions were taken by an agency of the federal government will result in the dismissal of plaintiff's Complaint.

## Conclusion

For the foregoing reasons, the United States will be substituted for HHS as the sole defendant in this action, and plaintiff's Complaint will be dismissed in part, without prejudice, for lack of subject matter jurisdiction, to the extent that it sounds in defamation. Otherwise, the government's Motion will be denied. However, in the accompanying Order, implementing these

rulings, plaintiff will be directed to show cause why the Complaint should not be dismissed for failure to state a claim upon which relief can be granted.[15]

Date:   February 26, 2013                             /s/
                                                Ellen Lipton Hollander
                                                United States District Judge

---

[15] My resolution of these issues makes it unnecessary to consider plaintiff's Second Opposition, dated December 31, 2012 (docketed January 7, 2013). I note, however, that plaintiff includes in that document assertions of discrimination against him on the basis of race and/or national origin. Plaintiff's Complaint contains no allegations that are suggestive of discrimination by any entity. Accordingly, such allegations are not now pending before the Court in this suit. "'It is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss . . . .'" *Gallagher v. City of Clayton*, 699 F.3d 1013, 1022 (6th Cir. 2012) (citation omitted). If plaintiff is able to show good cause to maintain a claim against the United States, and if he wishes to amend his complaint to include allegations of discrimination on the basis of race or national origin, he must comply with Rule 15 of the Federal Rules of Civil Procedure and Local Rule 103.6, governing amendment of pleadings.